G. W. O'NEILL, Appellee, v. F. H. EVERHAM, Appellant.

Conversion: EVIDENCE. In an action for the conversion of horses
1    and other property sold by defendant to plaintiff in connection
     with a livery stock, the evidence is considered and held to
     support a verdict for plaintiff.

Conversion: INSTRUCTION. In an action for conversion of horses
2    sold plaintiff in connection with a livery stock, an instruction
     that if defendant did not comply with his contract but deliv-
     ered horses not fit for the business, when there were others
     from which a suitable selection might have been made, then
     plaintiff should recover the difference in value between those
     delivered and those which should have been delivered, was
     held not prejudicial to defendant.

*Appeal from Mills District Court.*—HON. A. B. THORNELL,
                              Judge.

THURSDAY, MAY 5, 1904.

ACTION for the conversion of certain chattel property.
Defendant denied the alleged conversion, and pleaded a

counterclaim for taxes due. The case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Shirley Gillilland* for appellant.

*Genung & Genung* and *W. S. Lewis* for appellee.

DEEMER, C. J.—Plaintiff claims that he made a contract of exchange with the defendant, whereby he (defendant), for and in consideration of the conveyance of a certain farm in Nebraska then belonging to plaintiff, and various other considerations, agreed to convey to plaintiff certain lots in the city of Glenwood, together with the buildings thereon, which were used as a livery stable, and certain horses, vehicles, and other property used in the livery business; that, at the time the bargain was made, the property was all fully identified and agreed upon, but that between the actual making of the agreement and the formal execution of the title papers, defendant removed certain property from the livery barn, and substituted other and less valuable property therefor, and removed other property for which he made no substitution; and that, by reason of said substitution and conversion, plaintiff has been damaged in a sum over $600. The property which it is claimed defendant converted consisted of four horses, one double carriage, six lap robes, six whips, two pairs of doubletrees, one hundred bushels of corn, one tongue and doubletrees, two sets of harness, and the cushions and upholstering of three sleighs. Defendant denied the alleged conversion, although he admitted that he had not delivered all the corn which he had agreed to deliver, but pleaded that no time was fixed for the delivery thereof, and that plaintiff had made no demand therefor. His counterclaim was for $42 difference in taxes on the two properties, which he alleged plaintiff agreed to pay, but failed and neglected to do so. On the issues thus joined, the jury returned a verdict for plaintiff in the sum of $300, upon which judgment was rendered, and defendant appeals.

We have had some difficulty in discovering the exact points relied upon for a reversal. Appellant's counsel filed his brief before the new rules went into effect, and he has not stated the points relied upon, nor divided them into paragraphs. He did file an assignment of errors, as required by law when the brief was filed, but he does not argue these seriatim. His claim, as we understand it, is that the verdict has no support in the evidence; that the court erred in wholly ignoring the issues in its instructions; and that the fifth paragraph of the charge, as given by the court, was erroneous. The horses and other property which defendant agreed to convey to the plaintiff, were not definitely described in any of the contracts between the parties. As to the horses, the description in one instrument was "16 head of livery horses running in age from 4 to 10 years," and in the other it was "16 head of livery horses, eleven head being in the barn on the date of contract, five head added from the stalk field that had been used in the barn." The age description did not appear in this latter instrument, which was the formal bill of sale. The horses which plaintiff claims defendant converted were a sorrel horse called "Doc," a bay mare called "Daisy," for which defendant substituted two horses of little or no value; and a black team that had been used in the livery business, and was in the barn at the time the contract was executed, for which another and worthless team was substituted. It seems there were more than eleven horses in the barn at the time the plaintiff purchased. Some of them did not belong to the defendant, but he had there more than eleven head which he owned, and which were used in the livery business. It is practically conceded that the black team was in the barn at the time plaintiff purchased, but defendant contended that they did not belong to the livery stock, and that they were used by him in his private business. The horses Doc and Daisy were in the barn, as we understand it, when the purchase was made—at least, the jury was authorized to so find —but plaintiff claims that other and worthless horses were

*1. CONVERSION: evidence.* [marginal note]

substituted in their stead. Defendant contends that these two horses belonged to his son, and did not pass to plaintiff under either the contract or the bill of sale. This contention is denied by plaintiff, and he offered evidence to show that these animals were surreptitiously removed from the barn in the evening of February 5th, and that they in fact belonged to defendant at the time he made the trade with the plaintiff. According to defendant's own evidence, the horses Doc and Daisy were in the barn before the bill of sale was made, and it is clearly shown that these animals were left in the barn, the same as usual, after it is claimed defendant traded them to his son for some spotted ponies. As to the carriage, there is no doubt that it was in the barn when the trade was made, and that defendant took it out and substituted another in its stead. He claimed, however, that this was his family carriage, and that it did not pass with the other property. This was denied by the plaintiff. There is no doubt, under the evidence, that defendant substituted other property for that which was in the barn when the trade was made, and it was for the jury to say whether this substitution was in good faith; and to settle the issues of fact between these parties. There was evidence to sustain the verdict, not only as to the property alleged to have been converted, but as to the value thereof.

The general complaint that the instructions do not fit the issues, even if sufficiently specific to present any question, is without merit. The fifth instruction reads as follows: "(5) The burden rests with the plaintiff to show by the greater weight of the evidence that the defendant failed to comply with his contract in delivering said horses, and the amount he has been damaged by such failure. The complaint of plaintiff appears to be confined to the two white horses and the brown or bay mare described in the evidence; and if it appears from the evidence that the defendant did not comply with his contract in delivering said animals to plaintiff, in that same were not fit or suitable for the livery business, and such suit-

2. CONVERSION: instructions.

able horses could have been selected by defendant from those before used in the barn, then the plaintiff would be entitled to recover, as to said item, such sum as the evidence shows was the difference in value between the said horses thus delivered and such as should have been delivered by defendant to plaintiff, provided said horses were of less value than such as should have been delivered by defendant." The horses therein referred to were those which plaintiff claimed were substituted for a like number which defendant should have delivered under the contract—the white horses for the black team, and the brown or bay mare for the bay mare Daisy. The instruction does not, it is true, cover the sorrel horse, Doc, and perhaps does not meet either party's contention as made in the pleadings; but it was shown by the evidence that these horses were turned over by defendant to the plaintiff, and that they were practically worthless. In so far as it fails to meet the exact issues, it was prejudicial to the plaintiff, and not to the defendant. The instruction should also be construed with reference to the issues made by the parties, which were clearly stated in the instructions. While these animals may have come from the stalk field, they were substituted for animals which were in the barn, which it is claimed were covered by the contract, and the instruction was proper to meet this feature of the case. The instruction was not given on the theory suggested by appellant, to the effect that the jury was thereby warranted in finding damages for defendant's failure to turn over the proper animals from the stalk field. There was no question regarding those animals, save as they were attempted to be substituted for animals which it is claimed were in the barn when the trade was made.

Having now gone over all the points made in the appellant's argument, and finding no prejudicial error, the judgment of the district court must be, and it is, AFFIRMED.